T.C. Summary Opinion 2001-51


UNITED STATES TAX COURT


JOHN WILLIAM BARCK & JANIE R. BARCK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3170-99S.                    Filed April 5, 2001.


John William Barck and Janie R. Barck, pro sese.

<u>Charles M. Berlau</u>, for respondent.


DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes of $12,278, $6,142, and $7,074 and accuracy-related penalties of $2,456, $1,228, and $1,415 for the taxable years 1993, 1994, and 1995.

After concessions, the issues for decision are: (1) Whether petitioners are entitled to charitable contribution deductions in excess of the amounts allowed and conceded by respondent for 1993 and 1994; (2) whether petitioners recognized unreported gain on the sale of certain property in 1993; (3) whether petitioners made deductible interest payments in 1994 and 1995 that were not claimed as deductions on their returns; and (4) whether petitioners are liable for the accuracy-related penalties under section 6662(a).[1]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Ashland, Missouri, on the date the petition was filed in this case.

---

[1]With respect to issues one and two, respondent concedes petitioners are entitled to an additional deduction for charitable contributions in 1993 and a reduction in the amount of the gain recognized, as discussed below. We treat determinations made in the notice of deficiency but not addressed here as having been conceded by petitioners because they were not disputed either in the petition or at trial.

The first issue for decision is whether petitioners are entitled to charitable contribution deductions in excess of the amounts allowed by respondent for 1993 and 1994.

A taxpayer is required to maintain records sufficient to establish the amount of his deductions. See sec. 6001; sec. 1.6001-1(a) and (e), Income Tax Regs. In the event that a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We may estimate a deductible expense only where the taxpayer presents evidence sufficient to provide some basis upon which an estimate may be made. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Certain expenses related to travel, entertainment, gifts, and listed property (as defined in section 280F(d)(4)) are additionally subject to the strict substantiation requirements of section 274(d). See sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Section 170(a) allows a deduction for charitable contributions made during the taxable year to certain listed types of organizations, if the deductions are verified under regulations prescribed by the Secretary. See sec. 170(a)(1);

sec. 1.170A-13, Income Tax Regs.  To be deductible, contributions must be made "to or for the use of" organizations listed in section 170(c)(1)-(5).  Sec. 170(c).  The phrase "for the use of" was added by Congress to allow a deduction for gifts made in trust for a charitable organization or under a similar legal arrangement creating rights which may be legally enforced by the organization; gifts made to an individual for the use of a charity do not meet the requirements for deductibility in the absence of such an arrangement.  See Davis v. United States, 495 U.S. 472 (1990).

In 1993, petitioners claimed a deduction of $9,329 for charitable contributions.  Respondent allowed $4,557 of this amount in the notice of deficiency and has since conceded an additional $1,840.  In 1994, petitioners claimed a deduction of $7,000 for charitable contributions.  Respondent allowed $1,665 of this amount.

Petitioner husband (petitioner) testified that the amounts disallowed and not conceded by respondent for 1993 were contributions made by him in cash, primarily when attending church.  Petitioner has no written records evidencing such contributions.  Without written records, a deduction for charitable contributions generally is not allowed.  See sec. 1.170A-13, Income Tax Regs.  In certain circumstances, however, we have applied Cohan v. Commissioner, supra, to allow a

deduction even without written records where a taxpayer provides a sufficient basis to estimate the amount of the contributions, such as showing regular church attendance and regular cash contributions thereto. See, e.g., Fontanilla v. Commissioner, T.C. Memo. 1999-156; Meeks v. Commissioner, T.C. Memo. 1998-109, affd. 208 F.3d 221 (9th Cir. 2000); Drake v. Commissioner, T.C. Memo. 1997-487. Petitioner attended church every Sunday and often donated cash, even when he traveled. However, he failed to establish any regularity in occurrence or extent of the donations from which we could estimate an amount. Thus, petitioners are not entitled to a charitable contribution deduction for 1993 in excess of $6,397.

The amounts disallowed in 1994 all relate to contributions made to Eugene Brown. Mr. Brown served as president of the Full Gospel Business Men's Fellowship International (FGBMFI). The disallowed contributions consist of an automobile which they valued at $5,000 and cash of $335 in the form of checks made payable to the order of Gene Brown. Petitioners testified that the car was given to FGBMFI. However, the car was titled solely in Mr. Brown's name. In addition, Mr. Brown provided a handwritten statement that the car was given to him as a gift by petitioner. Despite petitioners' testimony, it is clear that the car was transferred from petitioners to Mr. Brown individually and not to the charitable organization. Thus, the disallowed

contributions in 1994 were not made "to" a qualified organization, and they were not made "for the use of" such an organization within the meaning of the statute because there was no trust-like arrangement creating legally enforceable rights for the organization. See Davis v. United States, supra. Although petitioners' actions may have been entirely altruistic and intended to benefit FGBMFI, the contributions are not deductible for Federal income tax purposes. Petitioners are not entitled to a charitable contribution deduction for 1994 in excess of $1,665.

The second issue for decision is whether petitioners must include in income gain on the sale of certain property in 1993.

Under sections 61(a) and 1001(c), taxpayers generally must recognize in the year of sale all gain or loss realized upon the sale or exchange of property.

Respondent determined that petitioner recognized gain of $28,462 on the sale of a 1989 Kenworth tractor and 1991 Transcraft flatbed trailer. According to respondent's trial memorandum, the gain was determined as follows (petitioner disputes this calculation):

|  | Tractor |  | Trailer |  |
|---|---|---|---|---|
| Sales price |  | $28,843 |  | $9,157 |
| Cost | $60,000 |  | $19,050 |  |
| Depreciation | (57,777) |  | (11,735) |  |
| Adjusted basis |  | (2,223) |  | (7,315) |
| Recognized gain |  | 26,620 |  | 1,842 |

Thus, respondent determined the total sales price for tractor and trailer to be $38,000. Respondent has conceded that the total

gain be reduced by $5,084 to reflect the cost of an engine overhaul for the tractor.

Respondent offers the following three checks as the basis of his determination of the purchase price. Each check is a cashier's check, drawn on London Bank & Trust of London, Kentucky, with Gary and Fairy Smith (the purchasers of the tractor and trailer) as remitters.

| Number | Check Date | Amount | Payment Date | Payee | Indorser |
|--------|-----------|--------|-------------|-------|----------|
| 091724 | 9/14/93 | $500 | 9/15/93 | Gary or Fairy Smith | Gary Smith[1] |
| 091725 | 9/14/93 | 24,000 | 9/17/93 | Petitioner | Petitioner[2] |
| 091726 | 9/14/93 | 13,500 | 9/20/93 | Petitioner | Petitioner[3] |

[1]Blank indorsement
[2]Blank indorsement
[3]Indorsed for petitioner by petitioner wife, for deposit only

At trial, petitioners disputed receiving two of these checks-- numbers 091724 and 091726. Evidence received into the record, however, shows that check number 091726 was received by petitioners because it was indorsed "for deposit only," "Will Barck by Janie Barck." The purpose of the other disputed check, number 091724, is unclear; why the purchasers would obtain a cashier's check payable to themselves is unknown. Respondent argues that this check was used by the purchaser as a retainer in a "good-faith effort in the sale." Although there is no evidence that petitioners received the cashier's check itself, the proximity of the check number, check date, and payment date of the disputed check to those of the other checks indicates that this amount was most likely given to petitioners in cash for a

down payment or for a similar purpose, as respondent argues. We therefore uphold respondent's determination of the amount of gain recognized on this transaction, as modified by the concession.

The third issue for decision is whether petitioners made deductible interest payments in 1994 and 1995 that were not claimed as deductions on their returns.

Interest is allowed as a deduction to non-corporate taxpayers under section 163(a) only if it is not "personal interest" as defined under section 163(h)(2). See sec. 163(h)(1). Interest which is not personal interest and therefore may be deducted unless otherwise not allowed includes: (1) interest paid or accrued on indebtedness properly allocable to a trade or business other than that of performing services as an employee; (2) any investment interest; and (3) any interest which is taken into account under section 469 in computing income or loss from a passive activity of the taxpayer. See sec. 163(h)(2)(A), (B), and (C).

Petitioners argue that petitioner borrowed $60,000 from his sister for use in starting a "rental real estate" business.[2]

---

[2]Petitioners made this argument for the first time at trial, but respondent did not object either to petitioners' argument or to their presentation of supporting evidence. We therefore treat this issue as having been properly pled. See Rule 41(b)(1) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); Parekh v. Commissioner, T.C. Memo. 1998-151 (Rule 41(b) was satisfied
(continued...)

Petitioner testified that he paid $6,000 in interest per year in 1994 and 1995, in monthly payments of $500 each. However, he only established that he made the monthly payments in February, March, May, and July through December 1994, and January through October 1995. Petitioner repaid the principal in two payments of $30,000 each, one in December 1996 and the other in October 1997.[3] Petitioners filed Schedules C, Profit or Loss From Business, for an unnamed business in 1994 and 1995. In the notice of deficiency, respondent determined that petitioners improperly reported income and claimed expenses on these Schedules C, and instead should have used Schedules E, Supplemental Income and Loss, because the income and expenses were related to rental activities.[4] Although significant deductions were allowed by respondent in connection with this

---

[2](...continued)
when the parties "introduced the issue at trial and acquiesced in the introduction of evidence on that issue without objection.").

[3]Nearly all the payments were in the form of checks drawn on accounts in the name of Will or Janie Barck. However, the payment made in May 1994 was drawn on an account in the name of Barck, Inc. Whether such a corporation actually existed is unclear from the record. If it did not, this account was most likely used by petitioner informally for individual business purposes. In any event, we accept petitioner's testimony that he intermingled funds between his accounts and that he used individual funds deposited into the Barck, Inc. account to make the interest payment.

[4]Petitioners also filed a Schedule C in 1993 for a business involved in "mobile home rent." It is unclear if this is the same rental activity as that in which petitioners were engaged in 1994 and 1995.

activity for mortgage interest in each year, no deductions were allowed for "other interest." The Schedule E rental income and expense deductions set forth in the notice of deficiency were as follows:

|  | 1994 | 1995 |
|---|---|---|
| Income | $32,019 | $81,603 |
| Expenses | | |
| Advertising | $300 | $117 |
| Car & truck | 2,085 | 5,204 |
| Cleaning & maintenance | 26 | -0- |
| Legal & professional | 159 | -0- |
| Mortgage interest | 8,087 | 13,885 |
| Repairs & maintenance | 10,729 | 10,066 |
| Supplies | 592 | -0- |
| Taxes & licenses | 582 | 1,885 |
| Utilities | 1,404 | 4,139 |
| Lot rent | 5,770 | 15,715 |
| Wages | -0- | 2,583 |
| Insurance | 1,179 | 3,721 |
| Depreciation | 1,323 | 6,701 |
| Other | 214 | -0- |
| Total | 32,450 | 64,016 |
| Sch. E rental income (loss) | (431) | 17,587 |

We accept petitioner's testimony concerning the existence and nature of the $60,000 loan, corroborated by the above detailed payments and respondent's determination that petitioners were conducting a rental activity in 1994 and 1995. We hold that petitioners are entitled to rental expense deductions for interest payments of $4,500 in 1994 and $5,000 in 1995.

We briefly note that respondent has not argued that petitioner's rental activity was either passive or related to property held for investment. See sec. 163(d); sec. 469. Nothing in the record indicates that the additional deductions allowed by our holding in this case are limited under either section 163(d) or section 469, and we so hold.

The final issue for decision is whether petitioners are liable for the accuracy-related penalties under section 6662(a).

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, including (1) negligence or disregard of rules or regulations; and (2) any substantial understatement of income tax. See sec. 6662(b)(1) and (2). Respondent determined that petitioners are liable, with respect to each year in issue, for an accuracy-related penalty due to one or both of these factors for an underpayment equal to the total amount of the deficiency.

"Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, see sec. 6662(c), including any failure to keep adequate books and records or to substantiate items properly, see sec. l.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard. See sec. 6662(c).

A "substantial understatement" exists where the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. See sec. 6662(d)(1)(A). For purposes of this computation, the amount of the understatement is reduced to the extent attributable to an item: (1) If there exists or existed substantial authority for the taxpayer's treatment of the item; or (2) if the relevant facts affecting the treatment of the item are adequately

disclosed on the taxpayer's return or an attached statement, and there is a reasonable basis for the taxpayer's treatment of the item. See sec. 6662(d)(2)(B).

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. See id.

Petitioners dispute the assertion of the accuracy-related penalties, but have not presented any evidence or arguments specifically addressing this issue. We find that the record in its entirety supports respondent's assertion of the penalties in this case, and we therefore uphold respondent's determination in this regard, as modified by respondent's concessions and our holding on the other issues in this case.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

under Rule 155.
